# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

REGINALD HOLSTON,

    Petitioner,

v.                                                  CASE NO. 8:17-cv-796-T-02TGW

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

This cause comes before the Court on the second amended petition for writ of habeas corpus (Dkt. 14) filed by Reginald Holston pursuant to 28 U.S.C. § 2241, as earlier directed by this Court (Dkt. 11),[1] and the response (Dkt. 17). After careful consideration of the submissions of the parties and the entire file, the Court concludes the petition should be construed as seeking relief under both § 2241 and § 2254[2] and be denied.

---

[1] Initially, it was believed Petitioner was a federal inmate challenging his federal sentence on the matter of prison disciplinary actions. Dkt. 11 at n.1. He is, instead, a state prisoner serving a state sentence. He is currently assigned to the Charlotte Correctional Institution in Punta Gorda, Florida. Dkts. 23, 24.

[2] *Medberry v. Crosby*, 351 F.3d 1049, 1054 (11th Cir. 2003) (holding that habeas petition brought by state prisoner serving state sentence who is challenging loss of gain time resulting from state prison disciplinary proceeding, is construed as being filed under both 28 U.S.C. § 2241 and § 2254).

## BACKGROUND

Reginald Holston is a state inmate who was housed at Everglades Correctional Institution in Miami, Florida, when he filed his initial petition for writ of habeas corpus in the Northern District of Florida in 2017. Dkt. 1.[3] Petitioner is serving a prison sentence for organized fraud and other crimes, which was imposed by the state court, specifically the Circuit Court of Martin County, Florida. Dkt. 17-1 at 1. In this habeas proceeding, he challenges prison disciplinary action taken against him by the Florida Department of Corrections ("DOC") in July 2014 while he was incarcerated at Hardee Correctional Institute. He seeks to expunge the disciplinary report, receive a new hearing for the infraction, and restore his lost gain time of approximately 100 days.[4]

In this habeas petition he claims his due process rights were violated because one of the hearing officers at his disciplinary hearing, Ms. Garrett-Sanchez, should have been disqualified. He also asserts his claim of self-defense to the disciplinary charge of battery of an inmate should have operated as a complete bar to the conviction, and the law was therefore misapplied at the hearing.

---

[3] The Northern District transferred the petition to this Court because none of the factors establishing jurisdiction under 28 U.S.C. §2241(d) were present. Dkt. 8. Petitioner's disciplinary proceedings occurred in the Middle District and therefore transfer here was appropriate. *See* 28 U.S.C. § 1631 (stating that court lacking jurisdiction shall transfer case to court in which action could have initially been brought).

[4] His current release date is sometime in 2031. *See* http://dc.state.fl.us/offenderSearch, which was last searched in April 2020.

## DISCIPLINARY PROCEEDINGS (at Hardee Institute)

On July 8, 2014, Petitioner was issued a disciplinary report for battery or attempted battery on an inmate in violation of Florida Administrative Code Rule 33-601.314, Section 1 (1-18).[5]  Dkt. 17-2 at 1.  The charge provides:

> On July 1, 2014 at approximately 10:39 a.m. I, Colonel J. Miners along with Mr. L. Olson, AWP and Mrs. S. Waller were conducting ICT (Close Management Recommendations) in "E" dormitory. While hearing the close management recommendation on inmate Holston . . . he admitted to striking inmate Boatwright . . . causing him to fall and strike the back of his head. Inmate Holston's admission to the ICT team places him in violation of 1-18 battery or attempted battery on an inmate. The delay in writing this report was due to it being under investigation. This battery occurred on 6-17-2014.

*Id*.  Close management, or "CM," is "the confinement of an inmate from the general population, for reasons of security or the order and effective management of the institution, where the inmate, through his or her behavior, has demonstrated an inability to live in the general population without abusing the rights and privileges of others."  Fla. Admin. Code r. 33-601.800(1)(d).  The "ICT" is the institutional classification team "consisting of the warden or assistant warden, classification supervisor, chief of security, and other members as necessary . . .."  Fla. Admin. Code r. 33-601.800(1)(k).  "The ICT shall evaluate the

---

[5] Section 1 under Rule 33-601.314 is titled "Assault, Battery, Threats, and Disrespect."  The offense listed as 1-18 is "Battery or attempted battery on an inmate" with a maximum penalty of 60 days of disciplinary confinement and all gain time taken.  Fla. Admin. Code r. 33-601.314, § 1 (1-18).

3

recommendation for close management placement and the mental health assessment, interview the inmate, and consider the information provided by the inmate." Fla. Admin. Code r. 33-601.800(3)(g).

An investigation began early on July 2, which was the day after Petitioner's admission to the battery. Dkt. 17-2 at 3-11. Petitioner was advised of his rights and indicated he had no witnesses, documents, or physical evidence in his defense. Dkt. 17-2 at 3-4, 5, 10–11. He declined the assistance of staff. Dkt. 17-2 at 12.

At the disciplinary hearing held July 10, 2014, Petitioner refused to appear. Dkt. 17-2 at 12. The refusal was treated as a default plea of not guilty. *Id*. Both Petitioner and inmate Boatwright gave statements prior to the hearing. Dkt. 17-2 at 4, 9. Petitioner's statement maintained he acted in self-defense:

> At the [ICT close management] hearing, I explained that inmate Boatwright and I squared off because he wanted me to pay him 100 dollars for civil legal work. We both put up our hands and charged each other. I explained that I fought him in self-defense. I had a right to fight him back. I told Captain Keith the same thing on the day it happened.

Dkt. 17-2 at 4. In inmate Boatwright's statement, he denied being assaulted by anyone at Hardee Correctional Institute. Dkt. 17-2 at 9.

Other statements considered by the disciplinary team include those of Colonel Miners, Classification Supervisor S. Waller, and Assistant Warden Olson, who all three witnessed Petitioner admit to the battery at the ICT close management interview. Dkt. 17-2 at 1, 3, 6, 7. The disciplinary team found

4

Petitioner guilty of battery on an inmate based on the incident report, Petitioner's admission, and the witness statements. Dkt. 17-2 at 12. He received 60 days of disciplinary confinement and lost 100 days of gain time. *Id*.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Petitioner began the state exhaustion requirements on September 5, 2014, by filing a writ with the Second Judicial Circuit in and for Leon County, Florida. Dkt. 17-4 at 1–11. He raised several issues including 1) the disciplinary hearing team's failure to consider his claim of self-defense and 2) the bias against Petitioner caused by Ms. Garrett-Sanchez serving on both the ICT and the disciplinary hearing team.

The state circuit court denied the petition and found the hearing team considered all statements including Petitioner's statement raising self-defense. Dkt. 17-4 at 80. With respect to Ms. Garrett-Sanchez's alleged bias, the circuit court found Petitioner failed to overcome the presumption that prison disciplinary hearings are unbiased, operating with honesty and integrity. Dkt. 17-4 at 82–83. On all issues, the court found Petitioner was afforded due process under *Wolff v. McDonnell*, 418 U.S. 539 (1974), and *Sandin v. Conner*, 515 U.S. 472 (1995).

Petitioner then filed a writ of certiorari in the First District Court of Appeal challenging the denial by the state circuit court. Dkt. 17-5 at 1–11. After briefing, the writ was denied, and the mandate issued. Dkt. 17-5 at 49, 49. Petitioner then

5

filed the petition for writ of habeas corpus now before this Court. Dkt. 1. The operative petition is the amended one at docket 14.

## DISCUSSION

A habeas corpus petition challenging the loss of gain time as the result of a state prison disciplinary proceeding that allegedly violated the prisoner's due process rights must be reviewed under both the standards of 28 U.S.C. § 2254(d) and 28 U.S.C. § 2241. *Medberry v. Crosby*, 351 F.3d 1049, 1054 (11th Cir. 2003). First, habeas relief may not be granted unless the state court's adjudication of the merits was "contrary to" or "involved an unreasonable application of" clearly established federal law. 28 U.S.C. § 2254(d); *Cullen v Pinholster*, U.S. 131 S. Ct. 1388, 1398 (2011). Second, habeas may not be granted if the state court's decision was based on an "unreasonable determination of the facts." *Id*. A highly deferential standard of review applies to the reasonableness of a state court's determination of facts. 28 U.S.C. § 2254(e)(1).

Although state prisoners in custody pursuant to the judgment of a state court may file a habeas corpus petition in these circumstances under § 2241, they are limited by the highly deferential standard of § 2254(d). Just as a habeas petitioner seeking relief under § 2254 must exhaust state court remedies, so too must the state court prisoner who files under § 2241. *Dill v. Holt*, 371 F.3d 1301, 1302–03 (11th Cir. 2004). As outlined above, Petitioner exhausted his state court remedies. He

raised the issues that are now brought in this habeas proceeding before the state court, which issues were denied by the state court on the merits.

### *Due Process—Wolff requirements*

Before reaching the specific claims, the Court addresses whether Petitioner received the due process protections afforded a prisoner who loses time credits as a result of a disciplinary proceeding. Under *Wolff*, such a prisoner is entitled to 1) advance written notice of the charges and at least 24 hours to prepare a defense, 2) an opportunity, consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his own behalf, and 3) a written statement by the factfinders of the evidence relied upon and reason for the disciplinary action. *Id*., 418 U.S. at 563–66.

The state court determined the *Wolff* factors were met.[6] The incident (battery) occurred in June 2014, and the charge was written up on July 1 as a result of Petitioner's admission on that day. Petitioner received advance written notice of the charges on July 8, 2014, two days before the hearing held July 10. He did not choose the assistance of a staff member at the proceedings, but he gave a written statement of his version of the facts. He did not request any physical or documentary evidence, nor did he name any witnesses in his defense. Instead, he

---

[6] The state circuit court cited *Wolff*, *Sandin*, and *Hill* in its order finding no violation of due process in the disciplinary proceeding related to the July 1, 2014 violation. Dkt. 17-4.

7

ultimately chose not to attend the hearing. Nevertheless, the disciplinary team relied on all the witnesses' statements, including Petitioner's, and the facts as alleged in the charging report as reasons for the disciplinary action. Accordingly, Petitioner received due process as espoused in *Wolff* in connection with his disciplinary conviction for battery on another inmate.

### *Due Process—Self-defense*

Petitioner claims there was insufficient evidence to convict him of the disciplinary charges. He further argues the disciplinary hearing team misapplied the law of self-defense and should have found him immune from suit under Florida's "Stand Your Ground" law. With respect to the self-defense issue, the state circuit court found:

> The record demonstrates that the hearing team read all witness statements before reaching its decision. All witness statements necessarily include Petitioner's witness statements, which raises his claim of self-defense. The Institution also reviewed this claim and stated in response that, "[t]he hearing team took self-defense into consideration. . ." The hearing team was not required to state in its findings that it considered the inmate's defense. Due process only requires that the hearing team state the basis for its finding of guilt. *Wolff v. McDonnell*, 418 U.S. 594 (1974). The hearing team in this instance based its finding of guilt on the charging officer's statement and recorded that basis in writing.
>
> To the extent that the petitioner alleges the hearing team misapplied the law of self-defense, he fails to state a claim for a due process violation. An inmate does not have a constitutional right to raise a claim of self-defense as a defense to a prison disciplinary report. *Rowe v. DeBruyn*, 17 F.3d 1047, 1053 (7th Cir. 1994) (holding that incarcerated inmates do not have a constitutional right to raise claims of self-defense as a

8

defense to prison disciplinary charges); *Walker v. Sec'y, Dep't of Corrs.*, 2012 WL 3206776, at *8 (N.D. Fla. Apr. 23, 2012). Accordingly, any misapplication of the law on self-defense does not implicate due process concerns.[1]

> [1] To the extent Petitioner is making this claim to attempt to demonstrate that the DR hearing team should have ruled that he acted in self-defense, *i.e.*, that he is innocent, this is a challenge to the sufficiency of the evidence used to convict Petitioner of the DR. As stated in greater detail below, Petitioner was properly convicted of the DR based off "some" evidence pursuant to *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445 (1985).

Dkt. 17-4 at 80–81 (citations to state circuit court record omitted).

Petitioner raised the self-defense claim with ample facts in his written statement. The disciplinary team's report noted, "[A]ll witness statements read." This notation evidences the claim of self-defense and the surrounding facts were considered in reaching the team's decision. The team simply found more credible Colonel Miners' statement that Petitioner admitted to striking Boatwright and causing Boatwright to fall. The facts as conveyed by Colonel Miners' statement are sufficient to constitute "some" evidence, as defined in *Hill*, that Petitioner was guilty of the infraction.

Even if the team had not considered the self-defense claim, the failure to do so would not have constituted a violation of Petitioner's due process rights. *See DeBruyn*, 17 F.3d at 1053. Furthermore, to the extent Petitioner claims the team applied the incorrect law—that he was entitled to criminal and civil immunity under "Stand Your Ground"—he is mistaken. Disciplinary proceedings are civil in

nature, *see Wolff*, 418 U.S. at 556, and Boatwright, the victim, is not implicated in the disciplinary proceeding. Consequently, the state court's determination that Petitioner's due process rights were not violated regarding his self-defense claim was not contrary to, or an unreasonable application of, federal law under § 2254(d).

*Due Process—Bias of Disciplinary Hearing Team*

Petitioner claims his conviction for the infraction should be overturned because the disciplinary hearing team was biased. Ms. Garrett-Sanchez served on the team even though she had previously recommended him for close management concerning the same incident between him and Boatwright. Petitioner argues that she was predisposed to finding him guilty because she had already recommended him for CM.

Rule 33-601.306(1) of the Florida Administrative Code provides: "A person shall not serve as the hearing officer or as a member of the disciplinary team, or participate in the deliberations when they are: (a) A witness or the person who wrote the charge; (b) The investigating officer; (c) The person charged with review of the results of the disciplinary hearing[.]" Regarding the alleged impartiality of Ms. Garrett-Sanchez, the state circuit court wrote:

> Rule 33-601.306(1), Florida Administrative Code, only prohibits eyewitnesses to a DR or those who participate in the investigation of the DR as an investigative or reviewing officer from serving on the disciplinary team due to impartiality concerns. Ms. Garrett was not a

10

> witness to the infraction or to the CM hearing, which gave rise to the DR. She did not investigate the DR or review it at any relevant time. Prison officers adjudicating prison disciplinary hearings are presumed to be unbiased and acting with honesty and integrity. *See Withrow v. Jones*, 2005 WL 1270901, at *4 (M.D. Ala. May 27, 2005) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). In order to overcome this presumption, the "conduct of an officer must be so extreme that it deprived the hearing or appeal of the fairness and impartiality necessary to the fundamental fairness required by due process." *See Jones*, 2005 WL 127092, at *4, citing *N.L.R.B. v. Webb Ford, Inc.*, 689 F.2d 733 (7th Cir. 1982). The petitioner has not overcome this presumption.

Dkt. 17-4 at 82–83.

Ms. Garrett-Sanchez was not present at the interview before the ICT and therefore was not a witness to the charge. She did not write the charge, nor was she the investigating officer. She did not review the results of the disciplinary hearing. The state court's finding that Petitioner's due process rights were not violated by the make-up of the team is not contrary to or an unreasonable application of federal law. The state court's findings of fact, which are due great deference, are not unreasonable.

As noted by Respondent, close management is a type of status as opposed to punitive disciplinary confinement. *Hale v. McNeil*, No. 3:05-cv-565-J-32HTS, 2008 WL 4194852, at *10–11 (M.D. Fla. Sept. 11, 2008). CM is based on prison officials' determination that an inmate's behavior poses a risk to institutional security requiring enhanced security and supervision. *Id.* To recommend an individual for CM does not suggest the prison official believes the prisoner

committed a disciplinary infraction but establishes only that the prisoner needs additional security and supervision. Petitioner cannot rely on Ms. Garrett-Sanchez's recommendation for him to receive CM status as evidence of her partiality to finding him guilty of the underlying fight which was considered in determining CM status.

It is therefore **ORDERED AND ADJUDGED**:

1) The second amended petition for writ of habeas corpus (Dkt. 14) is denied.

2) The Clerk shall enter judgment against Petitioner, terminate any pending motions, and close the case.

**CERTIFICATE OF APPEALABILITY and**
**LEAVE TO APPEAL IN FORMA PAUPERIS**

A certificate of appealability will be granted only if "jurists of reason" would find it debatable "whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Petitioner cannot make this showing. Because he is not entitled to a certificate of appealability, he is not

entitled to an appeal *in forma pauperis*. Petitioner must obtain permission from the circuit court of appeals to appeal *in forma pauperis*.

**DONE AND ORDERED** at Tampa, Florida, on April 16, 2020.

*s/William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record and Petitioner, *pro se*